| | |
|---|---|
| BRYAN MAZZA,<br><br>         Plaintiff,<br><br>   v.<br><br>L. AUSTIN, et al.,<br><br>         Defendants. | No. 2:14-cv-0874 GEB AC P<br><br>FINDINGS AND RECOMMENDATIONS |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

I. <u>Introduction</u>

Plaintiff Bryan Mazza is a state prisoner incarcerated in California State Prison Solano (CSP-SOL), under the authority of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff proceeds pro se and in forma pauperis with this civil rights action filed pursuant to 42 U.S.C. § 1983. As ordered by the court, this case proceeds on the complaint and addendum filed together on October 28, 2015, on plaintiff's claims that defendants McCue, Kuersten, Tan, Lipson, and Austin were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment during his incarceration at CSP-SOL. <u>See</u> ECF No. 38.

Presently pending is a motion for summary judgment filed by the Office of the California Attorney General (AG) on behalf of defendants Austin, McCue and Kuersten, on the ground that plaintiff failed to exhaust his administrative remedies against these defendants. <u>See</u> ECF No. 108.

Defendant Lipson, who is also represented by the AG, is not seeking summary judgment; nor is defendant Tan, who is represented by private counsel. Plaintiff filed an opposition to the pending motion, ECF No. 117; defendants[1] filed a reply, ECF No. 118.

This action is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c). For the reasons that follow, this court recommends that defendants' motion for summary judgment be denied.

II. Legal Standards

A. Legal Standards for Exhausting Administrative Remedies

"The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." Ross v. Blake, 136 S. Ct. 1850, 1854-55 (2016) (quoting 42 U.S.C. § 1997e(a)). "There is no question that exhaustion is mandatory under the PLRA[.]" Jones v. Bock, 549 U.S. 199, 211 (2007) (citation omitted) (cited with approval in Ross, 136 S. Ct. at 1856). The PLRA also requires that prisoners, when grieving their appeal, adhere to the prison's "critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 91 (2006). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 at 218. The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones, 549 U.S. at 204.

Regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as some remedy remains available. "[A]a prisoner does not comply with [the exhaustion] requirement by exhausting *available* remedies during the course of the litigation." McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam)). However, the availability of administrative remedies must be assessed at the time the prisoner filed his action. Andres v. Marshall, 867 F.3d 1076, 1079 (9th Cir. 2017). "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no

---

[1] Hereafter in these findings and recommendations the term "defendants" shall refer only to moving defendants Austin, McCue and Kuersten unless otherwise noted.

longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (original emphasis) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross, 136 S. Ct. at 1862.

Thus, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Ross, 136 S. Ct. at 1859 (quoting Booth, 532 U.S. at 738). The United States Supreme Court has made clear that there are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. These circumstances are as follows: (1) the "administrative procedure . . . operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859-60 (citations omitted). Other than these circumstances demonstrating the unavailability of an administrative remedy, the mandatory language of 42 U.S.C. § 1997e(a) "foreclose[es] judicial discretion," which "means a court may not excuse a failure to exhaust, even to take [special] circumstances into account." Id., at 1856-57.

However, if a prisoner fails to comply with procedural requirements in pursuing his appeal, but prison officials address the merits of the appeal nevertheless, then the prisoner is deemed to have exhausted his available administrative remedies. See Reyes v. Smith, 810 F. 3d 654 (9th Cir. 2016).

Failure to exhaust administrative remedies is an affirmative defense that must be raised by defendants and proven on a motion for summary judgment. See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014), cert. denied sub nom. Scott v. Albino, 135 S. Ct. 403 (2014).

////

If a court concludes that a prisoner failed to exhaust his available administrative remedies, the proper remedy is dismissal without prejudice. See Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

### B. Legal Standards for Summary Judgment

The Ninth Circuit has laid out the analytical approach to be taken by district courts in assessing the merits of a motion for summary judgment based on the alleged failure of a prisoner to exhaust his administrative remedies. As set forth in Albino, 747 F.3d at 1172 (citation and internal quotations omitted):

> [T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy. . . . Once the defendant has carried that burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. However, . . . the ultimate burden of proof remains with the defendant.

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment ... is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. Moreover, "[a] [p]laintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).[2]

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a

---

[2] In addition, in considering a dispositive motion or opposition thereto in the case of a pro se plaintiff, the court does not require formal authentication of the exhibits attached to plaintiff's verified complaint or opposition. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made admissible at trial may be considered on summary judgment); see also Aholelei v. Hawaii Dept. of Public Safety, 220 Fed. Appx. 670, 672 (9th Cir. 2007) (district court abused its discretion in not considering plaintiff's evidence at summary judgment, "which consisted primarily of litigation and administrative documents involving another prison and letters from other prisoners" which evidence could be made admissible at trial through the other inmates' testimony at trial); see Ninth Circuit Rule 36-3 (unpublished Ninth Circuit decisions may be cited not for precedent but to indicate how the Court of Appeals may apply existing precedent).

5

reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U .S. at 587 (citations omitted).

In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

In applying these rules, district courts must "construe liberally motion papers and pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). However, "[if] a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ." Fed. R. Civ. P. 56(e)(2).

III. Plaintiff's Allegations

This action proceeds against five defendants on the claim that they were deliberately indifferent to plaintiff's serious medical needs by discontinuing plaintiff's prescription for morphine to treat his chronic pain. See ECF No. 38 (operative complaint and addendum).

Plaintiff contends that he is "is a chronic care, high risk patient that suffers from several orthopedic maladies: degenerative joint disease in both hips; arthritis in most of his major primary mover joints; arthritis in lumbar spine; fractures, bone spurring, and ligament tears in both elbows." ECF No. 38 at 3-4 (with minor edits). Plaintiff alleges he needs regularly prescribed pain medication in order to function on a daily basis, and previously obtained such medication without incident, as well as counseling and "holistics," from 2006 until April 2011, prior to his transfer to CSP-SOL.

Plaintiff alleges that defendant Dr. Lipson, plaintiff's assigned primary care physician (PCP) at CSP-SOL, "refused to properly medicate plaintiff" despite ordering extensive imaging that supported plaintiff's complaints of pain and the continuation of his morphine as prescribed by CSP-SOL neurologist Dr. Mitchell. Plaintiff alleges that Dr. McAlpine, CSP-SOL Chief Physician and Surgeon and Board certified rheumatologist, agreed with Dr. Mitchell's recommendation. Id. at 4-7. Plaintiff alleges that Dr. Lipson lobbied against plaintiff's morphine prescription on the allegedly false grounds that plaintiff was a heroin addict involved in the use of illicit drugs, and so informed plaintiff's psychologist, Dr. Kelly, and the Pain Management Committee members, viz., moving defendants Kuersten (PMC Chair), McCue (PMC Chief Executive Officer (CEO)), and Austin (PMC Chief Operating Officer (COO)). Id. at 7. Plaintiff alleges that the PMC agreed with Dr. Lipson's recommendation and denied plaintiff the morphine prescribed by Dr. Mitchell. Plaintiff alleges that as a result he suffers debilitating pain and deep depression, and is unable to participate in rehabilitative physical activities. Id. at 7-8. Defendant Dr. Tan is named based on his participation in the review and denial of plaintiff's administrative health care appeals challenging the termination of his morphine prescription.

IV. The Parties' Arguments

The moving defendants contend that, of the twenty administrative appeals submitted by plaintiff during his incarceration at CSP-SOL, *none* that were exhausted at Third Level Review *prior* to the filing of plaintiff's complaint "named" defendant Austin, or "concerned" defendants McCue or Kuersten. See ECF Nos. 108-2 at 3; 108-3 at 1-2. Defendants contend that the four appeals submitted by plaintiff that *do* identify these defendants were exhausted *after* plaintiff filed

7

his complaint:  (i) Log No. SOL HC 13038044; (ii) Log No. SOL HC 15040159; (iii) Log No. SOL HC 15040206; and (iv) Log No. SOL HC 15040586.  See ECF Nos. 108-2 at 3-5; 108-3 at 2-4.

Plaintiff responds that he timely exhausted his administrative remedies against all defendants, including moving defendants Austin, McCue and Kuersten, in the following appeals: (1) Log No. HC SOL 12036635, (2) Log No. HC SOL 13037465, and (3) Log No. HC SOL 13038044.  See ECF No. 117 at 5.

V. Facts

Unless otherwise noted, the following facts are, for purposes of summary judgment, undisputed by the parties[3] or have been determined by the court to be undisputed based on a thorough review of the record.

- Plaintiff filed his complaint in this action on March 20, 2014.[4]
- Unexhausted Log Nos. SOL HC 13038044, 15040159, 15040206 and 15040586

Appeal Log Nos. SOL HC 13038044, 15040159, 15040206, and 15040586 were each exhausted *after* plaintiff commenced this action.  Plaintiff does not dispute that the last three of these appeals were unexhausted when he filed his complaint, but seeks to rely on the first, Log No. HC SOL 13038044, to demonstrate exhaustion of his administrative remedies against the moving defendants.

////

---

[3] These facts are taken from plaintiff's verified complaint and addendum, and attached exhibits, ECF No. 38; Defendants' Statement of Undisputed Material Facts, and supporting declarations and exhibits, ECF No. 108; Plaintiff's Verified Opposition and Declaration thereto, ECF No. 117; and Defendants' Opposition to Plaintiff's Statement of Facts, ECF No. 118.

[4] Defendants identify the filing date of plaintiff's initial complaint as the date it was docketed by the court, March 21, 2014.  See ECF Nos. 3, 38.  However, plaintiff designated March 20, 2014 as the date he signed the complaint, see ECF No. 38 at 133, although he apparently verified the complaint and mailed it to the court on March 19, 2014, id. at 134-35.  Under the prison mailbox rule, a document is deemed served or filed on the date a prisoner signs the document and gives it to prison officials for mailing.  See Houston v. Lack, 487 U.S. 266 (1988) (establishing prison mailbox rule); Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010) (applying the mailbox rule to both state and federal filings by incarcerated inmates).  In the present case, the court finds that March 20, 2014 is the appropriate filing date, based on the putative date plaintiff signed the complaint and by application of the prison mailbox rule.

However, plaintiff's own exhibits demonstrate that Log No. HC SOL 13038044 was not exhausted until March 26, 2014, several days *after* plaintiff commenced this action on March 20, 2014. See ECF No. 3 at 10 (wherein plaintiff noted, in his Exhibit List, "Third Level Pending" in Ex. #20 (Log No. HC SOL 13038044)); see also ECF No. 33 at 1 (plaintiff noted, in Addendum to Exhibit List, the "Directors Level Decision in Exhibit #23 (Log No. HC SOL 13038044)).

Accordingly, the undisputed evidence establishes that none of these four appeals were administratively exhausted prior to the filing of plaintiff's complaint, and therefore none are considered in assessing the exhaustion of plaintiff's administrative remedies against the moving defendants. See 42 U.S.C. § 1997e(a)); Jones, 549 U.S. at 211; Ross, 136 S. Ct. at 1856.

- Exhausted Log Nos. SOL HC 12036635 and 13037465

The remaining two appeals were administratively exhausted prior to the commencement of this action. Unless otherwise noted, the exhibits cited in this discussion are attachments to the declaration of C. Mantel-Davis, CSP-SOL Custody Health Care Appeals Coordinator, and are hereafter referenced as "Defendants' Exhibits" (Dfs. Ex.). See ECF No. 108-5 et seq.

- Log No. HC SOL 12036635 (Exhausted at Third Level Review on December 21, 2012)

On May 29, 2012,[5] plaintiff submitted Appeal Log No. HC SOL 12036635, challenging the denial of his prescription for MS Contin (Morphine-Sulfate Controlled Release), prescribed by CSP-SOL neurologist Dr. Mitchell, to treat plaintiff's chronic pain. The appeal alleged, inter alia, that Dr. Lipson, as plaintiff's PCP, heard plaintiff's complaints of pain and ordered diagnostic tests that supported his complaints, yet made false statements to other medical providers, including the members of the PMC, that plaintiff was a heroin addict using illicit drugs, which resulted in the denial of plaintiff's morphine prescription. Plaintiff sought review of his file for the purpose of disproving Lipson's allegations and the underlying urinalysis results,

////

---

[5] The appeal was initially rejected on June 11, 2012, because not submitted on department-approved appeal forms. Plaintiff resubmitted the appeal on June 14, 2012. Dfs. Ex. D, ECF No. 108-6 at 32-3.

9

conferral with his mental health professionals, a change of his PCP, and reinstatement of his prescription for MS Contin. See Dfs. Ex. D, ECF No. 108-6 at 28-31.

On July 18, 2012, plaintiff was interviewed and evaluated by Dr. McAlpine, CSP-SOL Chief Physician and Surgeon and board certified rheumatologist. Dr. McAlpine presented plaintiff's case to the PMC on the same day, which again rejected plaintiff's request for reinstatement of his morphine prescription. Plaintiff's request to change PCPs was denied. However, the appeal was partially granted and plaintiff was scheduled for further evaluation by Dr. Mitchell at the end of June 2012. The First Level Review decision was issued on July 18, 2012, authored by Dr. McAlpine but signed by defendant Dr. McCue on McAlpine's behalf. See Dfs. Ex. E, ECF No. 108-6 at 35-7.

In seeking Second Level Review, plaintiff again challenged the results of his urinalyses and alleged that defendant McCue had participated in the First Level Review decision. Id. at 29. On August 28, 2012, this appeal was partially granted on Second Level Review by defendant Austin, CSP-SOL PMC-CEO, on the ground that plaintiff was again seen by Dr. Mitchell on August 2, 2012, who again prescribed morphine, which plaintiff apparently received. The appeal decision noted that Dr. Mitchell had also recommended plaintiff receive cervical epidural injections and referred him to the Pain Management Specialist. See Dfs. Ex. F, ECF No. 108-6 at 39-41.

On December 21, 2012, this appeal was denied at Third Level Review. See Dfs. Ex. A, ECF No. 108-6 at 9 (as reflected in CSP-SOL's Health Care Appeals and Risk Tracking System (HCARTS)).

- Log No. HC SOL 13037465 (Exhausted at Third Level Review on October 10, 2013)

On February 11, 2013,[6] plaintiff submitted Appeal Log No. SOL HC 13037465, in which he alleged that Physician Assistant (PA) Kotarek failed to record plaintiff's serious medical needs

---

[6] The appeal was initially rejected on February 20, 2013, because not submitted on department-approved appeal forms. Plaintiff resubmitted the appeal on March 7, 2013. Dfs. Ex. AA, ECF No. 108-8 at 14-5.

and symptoms in his treatment notes, interfered with plaintiff's referral for further neurological/ neurosurgical evaluation, and falsely stated that plaintiff was diverting medication. Plaintiff alleged that PA Kotarek's conduct constituted interference with his medical care, malpractice, deliberate indifference and was a crime. See Dfs. Ex. AA, ECF No. 108-8 at 10-3.

On March 19, 2013, defendant Dr. Tan interviewed plaintiff on the First Level Review of this appeal. In addition to considering plaintiff's allegations against PA Kotarek, Dr. Tan independently evaluated plaintiff's medical requests. Dr. Tan denied plaintiff's request to obtain the Oxycontin Extended Release (MS-ER) prescription recommended January 8, 2013 by Telemedicine Clinic physician Dr. Parmar (because not an "approved medication" "to manage chronic pain within the department"); determined that a neurosurgery referral was not medically indicated; referred plaintiff to Dr. Mitchell for further neurological followup; and referred plaintiff to his PCP (Lipson) for pain management. On these grounds, the appeal was partially granted on First Level Review. See Dfs. Ex. BB, ECF No. 108-8 at 17-8.

On May 29, 2013, Second Level Review of the appeal was conducted and denied by Dr. Pfile, CSP-SOL Acting Chief Medical Executive. Dr. Pfile found that PA Kotarek did not violate "any departmental policy or procedure during your clinical encounters with him" and that plaintiff "received the appropriate medical care for your complaints and condition." See Dfs. Ex. CC, ECF No. 108-8 at 20-23.

On October 10, 2013, this appeal was denied at Third Level Review. See Dfs. Ex. A, ECF No. 108-6 at 5 (as reflected in CSP-SOL's Health Care Appeals and Risk Tracking System (HCARTS)).

VI.     Analysis

First, the undersigned finds that Appeal Log No. HC SOL 13037465, though exhausted prior to the commencement of this action and relevant to the challenged conduct of defendant Tan, is not relevant to the challenged conduct of the moving defendants. Rather, this appeal focused on the challenged conduct of nondefendant PA Kotarek. Accordingly, the undersigned does not consider this appeal in assessing the exhaustion of plaintiff's administrative remedies against the moving defendants.

11

Next the court turns to administrative appeal Log No. HC SOL 12036635, which was timely exhausted on December 21, 2012. Moving defendants Austin, McCue and Kuersten contend that this appeal did not exhaust plaintiff's claims against them because it neither "named" nor "concerned" them. See ECF Nos. 108-2 at 3; 108-3 at 1-2. The undersigned reaches a different conclusion. Defendants McCue and Austin, both as individuals and as the members of the PMC, and defendant Kuersten, as member of the PMC, directly participated in the substantive medical decisions challenged by this appeal and further made during the processing of the appeal. Under Ninth Circuit authority, Reyes v. Smith, 810 F. 3d 654 (9th Cir. 2016), this is sufficient for the appeal to have exhausted plaintiff's claims against the moving defendants.

Plaintiff's Appeal Log No. HC SOL 12036635 challenged the discontinuation of his prescription for MS Contin, prescribed by CSP-SOL neurologist Dr. Mitchell to treat plaintiff's chronic pain. The appeal alleged that Dr. Lipson, plaintiff's PCP, lobbied the PMC members, based on false information, to deny plaintiff the prescription. Defendant Kuersten was PMC Chair; defendant McCue was PMC CEO, and defendant Austin was PMC-COO. The appeal challenges not only defendant Lipson's allegedly false statements to the PMC members, but the PMC's reliance on Dr. Lipson's statements. See Dfs. Ex. D, ECF No. 108-6 at 28-30 (plaintiff alleged in the appeal that defendant Lipson "went further by presenting to the entire Pain Management [Committee]" and sought "to convince Mitchell and the P.M. Committee to . . . take away the only medication that brings me any relief.")

On First Level Review of this appeal, plaintiff was interviewed and evaluated by nondefendant Dr. McAlpine, CSP-SOL Chief Physician and Surgeon and board certified rheumatologist. Before issuing the First Level Review decision, Dr. McAlpine again presented plaintiff's case to the PMC members who rejected plaintiff's request for reinstatement of his morphine prescription. Although Dr. McAlpine authored the First Level Review decision, it was signed by defendant Dr. McCue on McAlpine's behalf.

In seeking Second Level Review, plaintiff alleged that defendant McCue was present during McAlpine's First Level Review interview, and that the First Level Review decision failed to reflect McAlpine's statement that plaintiff's urinalyses could be inaccurate. Plaintiff stated,

1  "Dr. McCue, you sat right there and heard McAlpine tell me if the lab didn't run a synthetic
2  opiate screen[,] methadone wouldn't show up? Are you all going to pretend that didn't occur?"
3  ECF No. 108-6 at 29 (original emphasis). Defendant Austin issued the Second Level Review
4  decision.[7]

Defendants contend that "[p]laintiff does not explain what bearing this appeal has on the instant motion, thus failing to meet his burden to demonstrate a genuine dispute of material fact to defeat Defendants' motion for summary judgment for failure to exhaust administrative remedies." Id. at 3-4. However, it is defendants' burden to demonstrate that plaintiff did not exhaust an available administrative remedy. See Albino, 747 F.3d at 1172. Only after defendant has carried this burden does plaintiff bear the burden of producing evidence showing why the available administrative remedy was effectively unavailable under the circumstances of his case. Id. That is not the instant scenario.

At all relevant times the operative CDCR regulations required California prisoners submitting an inmate appeal to "list all staff member(s) involved and . . . describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218; see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) ("To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations") (citing Jones).

However, the Ninth Circuit Court of Appeals recently held that a prisoner's failure to adhere to a prison's procedural rule in pursuing an administrative appeal will not preclude judicial review of a claim that was decided by prison officials on the merits. See Reyes v. Smith, supra, 810 F.3d 654. In Reyes, the plaintiff filed a grievance generally challenging "'drastic changes' to his medication regimen" conveyed to him by prison physician Dr. Hashimoto, who told plaintiff that the Pain Management Committee had decided to taper and discontinue his morphine

---

[7] The record does not contain a copy of the decision.

prescription. The PMC included two physicians (Smith and Heatley) who originally approved plaintiff's prescription, but were not named in the appeal. After administrative exhaustion of the appeal, plaintiff filed a civil rights action against Smith, Heatley and others. The district court dismissed the claims against Smith and Heatley because they had not been identified in plaintiff's grievance. Plaintiff appealed. The Court of Appeals reversed, finding it improper for a federal court to dismiss "a claim that has already been fully vetted within the prison system." Reyes, 810 F.3d at 658. The court reasoned:

> When prison officials opt not to enforce a procedural rule but instead decide an inmate's grievance on the merits, the purposes of the PLRA exhaustion requirement have been fully served: Prison officials have had a fair opportunity to correct any claimed deprivation and an administrative record supporting the prison's decision has been developed.

Id.

The moving defendants were fully aware of plaintiff's claim that they were deliberately indifferent to plaintiff's serious medical needs by denying, and/or participating in the denial of, his prescription for narcotic pain medication. "The grievance process is only required to 'alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.'" Reyes, 810 F.3d at 659 (quoting Jones, 549 U.S. at 219). As the Court of Appeals observed:

> Reyes' grievance plainly put prison officials on notice of the nature of the wrong alleged in his federal suit – denial of pain medication by the defendant doctors. Prison officials also plainly knew that the Pain Management Committee, of which Drs. Smith and Heatley and Smith were members, had decided Reyes should not receive the medication; that decision was cited repeatedly by the prison administration in denying Reyes' grievance. Prison officials had full notice of the alleged deprivation and ample opportunity to resolve it. The grievance thus sufficed.

Id.

The active participation of defendants McCue and Austin, and of the PMC, in processing plaintiff's appeal accorded them personal notice of plaintiff's claim. This is more notice than required by Reyes.

////

14

Moreover, the facts of the instant case are distinguishable from the situation where a prisoner challenges the administrative review process on procedural grounds or merely due to an adverse outcome.[8] Here plaintiff challenges the medical decisions reached by the moving defendants, both as members of the PMC and in their roles directly assessing plaintiff's medical needs when reviewing plaintiff's appeal. Defendant McCue participated in the First Level Review and Second Level Review decisions; defendant Austin participated in the Second Level Review decision; and all moving defendants, including defendant Kuersten, participated both in the original denial of plaintiff's morphine prescription, as recommended by Dr. Lipson, and subsequent denial of plaintiff's request for reinstatement of the prescription when consulted by Dr. McAlpine while processing plaintiff's appeal. For these reasons, the undersigned finds that plaintiff's Appeal Log No. HC SOL 12036635 timely exhausted his deliberate indifference claims against moving defendants Austin, McCue and Kuersten. Accordingly, the undersigned recommends that defendants' motion for summary judgment be denied.

VII. Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment, ECF No. 108, be denied; and

2. Summary judgment on the issue of administrative exhaustion be entered for plaintiff.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that

////

---

[8] Cf. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) ("[P]rison officials are not required to process inmate grievances in a specific way or to respond to them in a favorable manner. Because there is no right to any particular grievance process, plaintiff cannot state a cognizable civil rights claim for a violation of his due process rights based on allegations that prison officials ignored or failed to properly process his inmate grievances."); see also Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006) (even prison administrators may be "liable for deliberate indifference when they knowingly fail to respond to an inmate's requests for help") (citations omitted).

failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 6, 2018

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE